OPINION
This case is before us on appeal by Beverly Ann Phillips from the Darke County Common Pleas Court, Domestic Relations Division's judgment entry adopting the magistrate's decision, filed on May 21, 1999, and the final judgment and decree of divorce, filed on June 9, 1999. In support of her appeal, Beverly assigns error to the trial court's failure to award permanent spousal support and its allocation to her of one-half of the deficiency judgment stemming from the foreclosure of the marital residence. The relevant facts and history of the case are summarized below.
Ben Phillips and Beverly Ann Phillips were married on November 27, 1976. No children were born as issue of the marriage. After twenty years of marriage, the parties separated and on February 27, 1997, Ben filed a complaint for divorce. On April 2, 1997, the trial court granted Beverly's motion restraining Ben from abusing, annoying, harassing, molesting, threatening, or injuring Beverly, from incurring further financial obligations or otherwise disposing of the parties' property, and from interfering with Beverly's use of the 1981 Pontiac Bonneville. A temporary order requiring Ben to pay $270 per month in support to Beverly, and an order for Ben to continue to provide her health insurance, was filed on April 24, 1997. Over Ben's objection, the trial court adopted the decision on June 4, 1997. The final hearing was held on January 20, 1999. The evidence established that at the time of the hearing, Ben was 58 years old and Beverly was 62 years old. The parties had endured more than twenty years of a tumultuous relationship, and had separated at least ten times prior to Beverly vacating the marital residence on October 27, 1996. Several of the separations had lasted twelve to fourteen months. Additionally, the parties had not enjoyed a high standard of living during their marriage.
Beverly had worked for General Motors for seventeen years until 1984, when she quit and "froze her retirement" to move with Ben to Kentucky. She did not maintain steady employment again until 1994, when she was hired as a cashier for Meijer's. She quit Meijer's after six months because she could not stand for long periods of time and she became sick whenever she worked. Beverly testified that she was unable to work due to her poor health, yet no doctor had made that determination and she had never pursued any disability benefits. According to Beverly, she suffered from nerve problems, a growth on her kidney, skin problems which had required several biopsies, and problems with the veins in her legs.
At the time of the final hearing, Beverly was receiving $628 per month in Social Security benefits, and $247.85 per month from her GM retirement benefits. Her current monthly expenses at the time of the hearing were approximately $700. These expenses included one-half of the $495 monthly rent for the apartment she shared with her sister, and an additional $450 per month for the phone bill, cable bill, clothes, food, gasoline, other automobile expenses, and payments on a loan through Bank One for a washer and dryer. Beverly testified that her expenses would increase substantially upon the divorce of the parties to pay for health insurance. Upon leaving GM, Beverly lost her medical benefits and was transferred to Ben's health insurance. Because Beverly would not be eligible for Medicare until age sixty-five, she would have to pay $316.31 per month for the next three years for COBRA benefits.
Ben's financial situation was similar. Ben had been unemployed since 1977, when he had sustained an accident at work that had injured his back. According to Ben, he had suffered from a bleeding ulcer, nervous seizures, back problems, heart blockages, and he has had a stroke. He had been receiving $1064 per month in Social Security Disability and $316.95 per month from a GE Capital Assurance pension. Ben indicated that his monthly expenses totaled approximately $950. These expenses included $200 for rent, $180 for utilities, and an additional $500 for phone service, cable, food, co-payments for doctor's visits and prescription medications, gasoline, automobile insurance, and life insurance. Ben explained that he was living with an older cousin who was not contributing to his expenses. He stated that he was planning to find his own apartment soon.
During the hearing, both parties testified that they purchased a home in 1993 located at 612 Moore Miller Road, New Paris, Ohio 45347 for $58,000. After vacating the marital residence in October of 1996, Beverly admitted that she made no payments on the mortgage, insurance or property taxes. Ben continued to make the $197 monthly mortgage payments through July of 1997. Ben stated that he stopped paying the mortgage because he became financially unable once the temporary spousal support was ordered, and because he wanted to move close to his family in Kentucky. Furthermore, the mortgage was bought out by another company, and he became frustrated when he was mistakenly told that he was $800 behind in payments. He vacated the residence in the spring of 1998.
As a result, after the house was appraised at $67,000, a foreclosure action was instituted against the couple demanding $67,213.68. An additional delinquency judgment was entered against the couple in the amount of $253.91 for unpaid taxes. Neither party wanted to be awarded the residence.
There was an additional marital debt owed to Household Finance in the amount of $2,600 for the purchase of a home satellite system. At the time of the hearing, neither party had been paying that debt, however Ben agreed to pay the debt if he could be awarded the satellite equipment. There existed another debt of $1,100 to Second National for a MasterCard account, which neither party had been paying. Ben agreed to be responsible for that debt, as the card was issued in his name.
The magistrate filed her decision and order on March 9, 1999, recommending that neither party should be ordered to pay spousal support, that Ben be held responsible for the Household Finance loan and the credit card debt, and that each of the parties be held responsible for one-half of the delinquent real estate taxes and any deficiency following the foreclosure on the marital residence. On March 22, 1999, Beverly filed objections to the magistrate's decision on the issues of attorney's fees, spousal support, and responsibility for the deficiency judgments.
The trial court adopted the magistrate's decision on May 21, 1999. In its decision, the trial court addressed Beverly's need for spousal support. However, given Ben's limited income, the trial court found that he would be unable to pay spousal support while maintaining his own living expenses. The trial court reserved jurisdiction to redetermine the issue should the incomes or needs of the parties change in the future. The trial court agreed that Beverly was responsible for one-half of the deficiency judgment and the delinquent taxes, noting specifically that Ben had not been ordered by any court to make the payments, and as a result both parties had been responsible for the payments on the mortgage and the taxes. Furthermore, the trial court concluded that Ben's responsibility was not heightened by a note Beverly wrote in May of 1998 which told Ben to sell the residence, as Ben would not have been legally able to sell the property in her absence.
On June 9, 1999, the judgment and decree of divorce was filed. Beverly filed her notice of appeal on June 25, 1999. She now appeals the trial court's judgment entry adopting the magistrate's decision and the decree of divorce, and she asserts three assignments of error.
 I. The court abused its discretion in failing to grant BeverlyAnn Phillips permanent spousal support.
In her first assignment of error, Beverly argues that the trial court abused its discretion in failing to award permanent spousal support. Beverly contends that Ben's income is much higher than hers, but his expenses are lower, therefore it was error for the trial court to "allow" Ben to maintain his own living expenses while she cannot do the same. Beverly further argues that the decision is inequitable because Ben failed to prove that he would be unable to afford his monthly expenses if he was ordered to pay permanent spousal support. As a final point, she alleges that Ben's financial misconduct resulted in a loss of the proceeds of the sale of the marital residence, which produced her greater need for spousal support.
After reviewing the record, we find no abuse of discretion by the trial court in its decision not to award permanent spousal support. In Paul v. Paul (Feb. 9, 1994), Greene App. No. 93-CA-47, unreported, we held that spousal support awards are grounded within the sound discretion of the trial court:
 The trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support. The court's discretion is limited and guided by R.C. 3105.18(C), which mandates that the court consider all of the relevant factors in that statute when making awards of spousal support. The court must evaluate the evidence germane to each applicable statutory factor, then weigh the need for support against the ability to pay. The decision of the trial court will not be reversed absent an abuse of discretion.
Id. (Citations omitted). See, also, Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67. Additionally, a trial court is required to "indicate the basis for its [spousal support] award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus.
The record establishes that the magistrate and the trial court provided detailed analyses supporting their decision to not award spousal support. The magistrate made the following findings regarding support:
 The parties' income has been discussed above. The Plaintiff has been found to be disabled by the Social Security Administration, and the Defendant does not agree with that diagnosis. Although the Defendant is several years older than the Plaintiff and feels that she is unable to work, she has no medical documentation to that effect. The parties have been married for 22 years. However, they have been separated for over two years. They had at least 10 prior separations, some of which lasted from 12 to 14 months. Considering all of the above circumstances, and the fact that the Plaintiff is willing to assume all of the parties' debt, the Magistrate finds that no spousal support should be ordered at this time.
The trial court, in adopting the magistrate's decision, noted additionally:
 Admittedly, the Defendant has need for spousal support. However, in view of the limited income of the Plaintiff, there is no ability of Plaintiff to pay spousal support while maintaining his own living expenses. Neither party apparently experienced a high standard of living during the marriage given their limited income and this pattern will continue by necessity afterwards. However, the Court will reserve jurisdiction of spousal support for future redetermination should the incomes or needs of either party change after the date of Decree.
Our review of the record supports the trial court's decision, and we find that statutory factors relevant to this case were in fact considered by the magistrate and the trial court in arriving at their decision to not establish spousal support. There was evidence in the record to support a finding that Ben's monthly income is $1,380.95, of which $1,064 is from Social Security Disability, and $316.95 is from GE Capital Assurance. His monthly expenses are $200 for rent, $150 in gas and electric, $30 for water, $37 for cable, $50 for telephone service, between $20 and $100 for his prescription medications, $5 for doctor's office co-pays, $150 for gasoline and automobile insurance, $250 for food, and $12 for life insurance, totaling an average monthly expenditure of $950. There was also evidence that Ben had been disabled and was unable to work, and for that reason he would be on this fixed income indefinitely. Furthermore, the record establishes that Ben was to assume payments of the Household Finance loan (estimated at $3,000), and the parties' credit card debt (estimated at $1,100). Therefore, the record more than amply supports the conclusion that the trial court appropriately considered the factors under R.C. 3105.18(C).
As a further point, Beverly produced no evidence at trial, and she does not assert on appeal, that Ben had additional income from other sources. Instead, she argues that the trial court did not address her need for spousal support and the necessity of "equalizing" the parties' incomes. We cannot say that the trial court erred in failing to equalize Beverly's income with that of Ben's, because this "income equalization" approach is not mandated by R.C. 3105.18:
 The standard of living achieved by the parties during their marriage is often altered upon termination. While we recognize that "* * * [n]either party should make a profit at the expense of the other * * *," Cherry [v. Cherry
(1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322], we do not interpret R.C. 3105.18 to require an alimony award that provides the parties with an equal standard of living or a standard of living equivalent to that established during the marriage. Sustenance alimony is based on need, and the trial court must have latitude to examine all the evidence before it awards an amount that is reasonable and equitable to both parties.
Kaechele, supra, at 95. See, also, Tremaine v. Tremaine (June 14, 1996), Montgomery App. Nos. 15589, 14579, unreported. As such, we find that the trial court did not abuse its discretion in failing to "equalize" the parties' incomes.
In this case, Ben and Beverly had minimal assets with fairly substantial expenses and indebtedness. We agree with Beverly that Ben's income is greater than hers, and with the additional expense of COBRA insurance, Beverly's expenses will be greater than Ben's. However, the trial court ordered Ben to pay approximately $4,000 of the marital debt. The trial court specifically noted that neither party experienced a "high" standard of living during the marriage, and this status would not change for either party upon the divorce and award of spousal support. Given the preceding discussion, we agree that Beverly is in need of spousal support, however Ben is not in the financial position to provide support and maintain his own living expenses. Furthermore, the record also supports the trial court's finding that Ben did not participate in economic or financial misconduct, which we will discuss more fully in the succeeding assignments of error.
It is clear that the trial court did consider the appropriate statutory factors. Under these facts and in light of the preceding discussion, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in its decision to not award Beverly spousal support. Accordingly, Beverly's first assignment of error is overruled.
We will address the next two assignments of error together, as they are interrelated.
II.
 The court abused its discretion in not finding Ben Phillips guilty of economic or financial misconduct.
 III.
 The court abused its discretion in not ordering Ben Phillips to be responsible for all judgments that arise as a result of non-payment of the house payment, and taxes for the marital residence.
Beverly alleges that Ben "should have been paying all of the [mortgage] payments since October, 1996 to the date of the hearing," as she moved out and he was the sole occupant of the home. According to Beverly, Ben never indicated to her that he intended to abandon the residence and stop paying the mortgage. For these reasons, Beverly argues that Ben committed "financial misconduct" and therefore should be responsible for any deficiency judgments.
An offended spouse may be compensated with a distributive award or a greater share of the marital property where there has been financial misconduct by the other spouse. R.C.3105.171(E)(3). In Butzer v. Butzer (Jan. 14, 1998), Wayne App. Nos. 97CA0018, 97CA0021, unreported, appellee alleged that appellant participated in marital misconduct for not paying on the mortgage of the parties' farm during their separation pending their divorce. The Wayne County Court of Appeals held that the trial court did not abuse its discretion in finding that no misconduct had occurred, because both parties' names were on the farm's mortgage note. The court stated:
 In the case at bar, Laura and Jeffrey were co-signors on the mortgage note on the farm. Laura alleges that Jeffrey had possession of the "payment book." Assuming this to be true, it did not relieve Laura of the responsibility of making the mortgage payments on the farm. The trial court found that Jeffrey and Laura were equally responsible for the mortgage payments and property taxes. This situation differs from the situation described above where one party withdraws funds, because in those cases, the other spouse has no control over those funds withdrawn. In the case at bar, Laura could have arranged to pay the mortgage and taxes even without the payment book, yet she failed to do so. The trial court did not abuse its discretion in finding that Laura and Jeffrey were equally responsible for paying the mortgage and taxes on the farm, and should equally bear the consequences of their failure to do so.
Id.
Based upon the above case, we cannot find that Ben committed financial or economic misconduct. As the trial court noted, Ben and Beverly were owners of the marital residence. They had purchased the home in November of 1993 and mortgaged the entire purchase price of $58,000. Ben made the $197 payments through July of 1997, but stopped paying after that time. Just because Beverly moved from the residence, leaving Ben as the sole occupant, she was not relieved of her responsibility to make payments on the mortgage. Neither of the parties had been ordered to pay the mortgage, and we agree with the trial court's determination that both parties were equally responsible for the payments and the taxes. As an additional point, Beverly testified that the whole balance of the mortgage was still due. In this regard, we find further support that no financial misconduct occurred because there was no loss in equity to either party for failure to pay.
Accordingly, we cannot find that the trial court abused its discretion in determining that Ben was not guilty of financial or economic misconduct, and in assessing each of the parties one half of the tax assessment and deficiency judgments in the foreclosure action. Beverly's second and third assignments of error are overruled.
The trial court's judgment will be affirmed.
BROGAN, J. and WOLFF, J., concur.